## BLUME *v.* SPEAR and another.

*(Circuit Court, S. D. New York.* April 2, 1887.)

1. COPYRIGHT—DEPOSIT OF TITLE—PROOF.

   Where it is proved that the party claiming a copyright for a song deposited two copies in the mail, and got a receipt from the librarian of congress acknowledging the receipt of two copies of the publication by its title in full, with the date over the official signature of the librarian, this will be considered evidence that two copies were delivered to the librarian as required by the act of congress.

2. SAME—NOTICE—TITLE—ABANDONMENT.

   An edition of a song was issued having a front cover, with an engraving thereon, and a list of seven songs, including the song in question, by a part of its title, over the name of the publisher, who claimed the copyright, and on the page where the music commenced the full title was printed, with the words, "Copyright, 1878," etc. *Held,* that this was a sufficient notice to the public of a claim of copyright, as required by act of congress of 1874, § 1, and that there was no abandonment of the copyright.

3. SAME—MUSICAL COMPOSITION—AUTHORSHIP.

   Mrs. Fannie Beane Gilday held to be the author of the musical composition entitled "My Own Sweet Darling, Colleen Dhas Machree."

4. SAME—INFRINGEMENT.

   The copyright of the musical composition entitled "My Own Sweet Darling, Colleen Dhas Machree," *held* infringed by the publication and sale of a song with music entitled "Call Me Back Again."

In Equity.

*Charles N. Judson,* for plaintiff.

*William Stone,* for defendant.

WHEELER, J. This suit is brought upon copyright No. 13,875, entered on November 27, 1878, by the orator, assignee of Fannie Beane, of a musical composition entitled "My Own Sweet Darling, Colleen Dhas Machree," against infringement by the publication and sale of a song with music entitled "Call Me Back Again." The defenses are, in substance, that Miss Fannie Beane, now Mrs. Fannie Beane Gilday, was not the author of this musical composition; that there is no proof that the orator delivered two copies of the composition at the office of the librarian of congress, or deposited them in the mail, addressed to him, within 10 days after publication, as required by section 4959, Rev. St. U. S.; that the orator abandoned the composition to the public by publishing it under a different title from that by which it was copyrighted; and that the music of "Call Me Back Again" does not infringe upon the copyright. The defendant has put in evidence a prior composition, entitled "Sweet Spirit, Hear My Prayer," to show that some parts of the music copyrighted were taken from that. There does not appear to be sufficient similarity between these two, however, to warrant this conclusion. There are some short parts of them which appear to be alike; but these parts are not continuous enough, nor sufficiently extended, to indicate with any degree of certainty that the author of the latter was guided or aided by the former. Her account of its composition is criticised because of

her youth at the time when she says the music was formed in her mind. It clearly appears, however, that, when she was old enough to do so intelligently, she had it written out, and no one else appears to have produced it before. Therefore she appears clearly enough to be the author of it, even if she had not carried it in her mind so long as she now seems to think she had.

The orator has put in evidence an acknowledgment of the receipt of two copies of the publication by its title, "My Own Sweet Darling, Colleen Dhas Machree," in full, dated November 29, 1878, over the official signature of the librarian. In *Merrell* v. *Tice*, 104 U. S. 557, it is held that a memorandum of the deposit of two copies, with the date, on a certified copy of the record of the copyright, below the official signature of the librarian, was not evidence of the fact of such deposit; but whether the certificate of that fact above, and authenticated by, the official seal and signature of the librarian, would be such evidence, appears to be left open. In this case the orator has testified that he deposited two copies in the mail, and got that receipt in answer, but without testifying how the copies were addressed. It is taken, from the connection between the deposit and the receipt of the acknowledgment, that the copies were addressed to the librarian. Therefore it is not necessary in this case to decide the question so left open by the supreme court in that case. There was an edition in which the whole title was not on the outside cover, but only "Colleen Dhas Machree;" and it is argued that perhaps the two copies sent were of that edition. The receipt, however, is for two copies with the full title, and that, in connection with the testimony, shows that two complete copies were sent.

The claim of abandonment or loss of the copyright is made in connection with this edition, alleged to be defective. This edition has a front cover, on which there is an engraving covering most of the outside page. At the bottom of that page there is a list of seven songs, including this, as "Colleen Dhas Machree," over the orator's name and place of business, as an advertisement of those publications, and there is no notice of, or reference to, any copyright on that page. The inside of that cover is entirely blank. On the next page the song and music commence. Above the music is the title "My Own Sweet Darling, Colleen Dhas Machree;" below the music is the notice, "Copyright, 1878, by Frederick Blume."

By section 1 of the act of 1874, (18 St. 78, Sup. Rev. St. 40,) it is enacted "that no person shall maintain an action for the infringement of his copyright, unless he shall give notice thereof by inserting in the copies of every edition published, on the title-page, or the page immediately following, if it be a book, or, if a map, chart, musical composition, print, cut, engraving, photograph, painting, drawing, chromo, statue, statuary, or model, or design intended to be completed as a work of fine arts, by inscribing upon some visible portion thereof, or of the substance upon which the same shall be mounted, the following words, viz.: 'Entered according to act of congress in the year ———, by A. B., in the office of the librarian of congress, at Washington,' or, at his op-

tion, the word 'Copyright,' together with the year the copyright was entered, and the name of the party by whom it was taken out, thus: 'Copyright, 18——, by A. B.'" This is different from Rev. St. § 4962, in respect to the place where the notice is to be put, as well as in respect to what it may be, on maps, charts, musical compositions, and other things, except books. By that section it was to be inscribed on "some portion of the face or front thereof, or on the face of the substance on which the same" should be mounted. By the latter act it is to be inscribed "upon some visible portion thereof, or of the substance on which the same shall be mounted."

The notice of copyright on the edition in question was on the first page of the composition, in plain sight, and was therefore upon some visible portion thereof, or of the substance upon which it was mounted, within the meaning of this section of the act of 1874. If the paper on which the composition is printed is not a portion of the composition, it is the substance on which it is mounted. There was no loss or abandonment of the copyright by failure to give notice of it. If, however, the orator published the composition under a title different from that by which he copyrighted it, in substance, he would thereby probably so depart from his copyright that he would leave the composition to the public. Drone, Copyrights, 140, 142. But in that edition the composition was published under its full title, by which, exactly, it was copyrighted, standing at the head of it, on the first page of it. The advertisement on the cover did not indicate that the pieces advertised were printed within. It merely signified that they were published, in some shape, by the orator. It was not necessary in advertising it that he should describe it in any particular manner; but when he came to printing the thing itself, and giving that out, it was necessary that he should follow the title by which he copyrighted it, if he would keep that right. This he did, and the right would seem to be well preserved to him.

Upon the question of infringement there is not much room for doubt. The theme or melody of the music is substantially the same in the copyrighted and the alleged infringing pieces. The measure of the former is followed in the latter, and is somewhat peculiar. When played by a competent musician, they appear to be really the same. There are variations, but they are so placed as to indicate that the former was taken deliberately, rather than that the latter was a new piece.

Let there be a decree making the preliminary injunction permanent, and for an account of profits, with costs.